[L. A. No. 18093. In Bank. June 16, 1943.]

CALIFORNIA DRIVE-IN RESTAURANT ASSOCIATION, et al., Respondents, v. MARGARETE L. CLARK, as Chief of the Division of Industrial Welfare, etc., et al., Appellants.

288

289

Robert W. Kenny, Attorney General, Earl Warren, Attorney General, Burdette J. Daniels and Alberta Belford, Depu-

ties Attorney General, Leo L. Schaumer and E. A. Lackmann for Appellants.

Thorpe & Bridges, Gerald Bridges, Frank R. Johnston and E. R. Young for Respondents.

CARTER, J.—Plaintiffs, operators of drive-in restaurants, successfully challenged in the superior court the validity of a regulation of the Industrial Welfare Commission, designated Order 12-A. Defendants, the Chief of the Division of Industrial Welfare of the Department of Industrial Relations and the members of the Industrial Welfare Commission of the Division of Industrial Welfare of the Department of Industrial Relations, appeal from the judgment entered for plaintiffs.

Plaintiffs are independent owners of establishments serving food and beverages. Their patronage consists chiefly of motorists who are served while remaining in their vehicles, however, service may be obtained in the owner's restaurant buildings. Most of the employees are girls and women commonly referred to as "car hops." The employment arrangement contemplates that the tips received by the employees shall constitute their wages, except that the employers make up the difference if the tips received fall below the minimum wage for minors and adult females fixed by the Industrial Welfare Commission. Plaintiffs posted in their business establishments, the notices required by a statute of 1929, hereinafter set forth. In 1940, plaintiffs were advised by the Chief of the Division of Industrial Welfare that their employment arrangement violated Order 12-A, in that they could not consider the tips received by the minor and female adult employees in computing and paying the minimum wage, and that they would be required to comply with said order.

Order 12-A became effective on June 8, 1923. In section 1 it fixed a minimum wage of $16 per week to be paid to all female adult or minor employees in restaurants or other places where food and drinks were .sold. Section 2 fixed the maximum amount the employer could deduct from the minimum wage for meals and lodging furnished the employee. Section 3, here in question, reads: "No employer may include tips or gratuities received by employees designated in sec-

tion 1 hereof as part of the legal minimum wages fixed by said section of this Order.'' The remaining nine sections deal with hours of labor, working conditions, the employer's duty to keep records, and the like.

In 1929 (Stats. 1929, p. 1971), a statute was passed by the Legislature, now appearing in sections 350-356 of the Labor Code. Section 351 of the Labor Code reads:

''Every employer or agent who collects, takes, or receives any gratuity or a part thereof, paid, given to, or left for an employee by a patron, or who deducts any amount from wages due an employee on account of such gratuity, or who requires an employee to credit the amount, or any part thereof, of such gratuity against and as a part of the wages due the employee from the employer, shall keep posted in a conspicuous place at the location where his business is carried on, in a place where it can easily be seen by the patrons thereof, a notice, in lettering or printing of not less than 48-point black-face type, to the following effect:

''(a) If not shared by the employees, that any gratuities paid, given to, or left for employees by patrons go to and belong to the business or employer and are not shared by the employees thereof.

''(b) If shared by the employees, the extent to which gratuities are shared between employer and employees.''

Section 352 specifies that the notice shall also state the extent to which employees are required to accept gratuities in lieu of wages or permit them to be credited against their wages. The provisions apply to all businesses having one or more persons in service. A gratuity ''includes any tip, gratuity, money, or part thereof, which has been paid or given to or left for an employee by a patron of a business over and above the actual amount due such business for services rendered or for goods, food, drink, or articles sold or served to such patron.''

A penalty is imposed for violation of the act, and it is declared that:

''The Legislature expressly declares that the purpose of this article is to prevent fraud upon the public in connection with the practice of tipping and declares that this article is passed for a public reason and cannot be contravened by a private agreement. As a part of the social public policy

of this State, this article is binding upon all departments of the State.'' (Lab. Code, sec. 356.)

Whether the 1929 statute impliedly annulled section 3 of said Order 12-A must be determined in the light of the appropriate rules of statutory construction. Generally, the same rules of construction and interpretation which apply to statutes govern the construction and interpretation of rules and regulations of administrative agencies. (*Miller* v. *United States*, 294 U.S. 435 [55 St.Ct. 440, 79 L.Ed. 977].) With reference to implied repeals of statutes this court stated in *Penziner* v. *West American Finance Co.*, 10 Cal.2d 160, 176 [74 P.2d 252]:

''The presumption is against repeals by implication, especially where the prior act has been generally understood and acted upon. To overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together. Where a modification will suffice, a repeal will not be presumed.'' (See 23 Cal.Jur. 694, et seq.) The purpose and object sought to be accomplished by legislation is an important factor in determining the legislative intent. (*San Francisco* v. *San Mateo County*, 17 Cal.2d 814 [112 P.2d 595].)

 Applying those rules to the instant case we find no repugnancy. The statute of 1929 and section 3 of Order 12-A rather than being irreconcilable are entirely harmonious. The basic policy underlying the order is the regulation of wages, hours and working conditions for minors and adult female employees in eating establishments. The subject of tipping is embraced only incidentally in the furtherance of that general purpose. Broadly, it was designed to deal with the industrial welfare of such employees, and the relation of their welfare to the general public interest. On the other hand the statute is concerned exclusively with tipping in respect to its relation to the public which patronizes not only restaurant establishments but many other businesses. The Legislature expressly stated that its purpose is ''to prevent fraud upon the public,'' a policy underlying no part of the order. Section 3 of the order states that tips received by the designated employees may not be included in the minimum wage therein fixed. If it be conceded that the effect

of said section is to prohibit the deduction of tips from the employees' wages, and that the statute impliedly authorizes such deduction as asserted by plaintiffs, such prohibition should be strictly limited, and said section would not be violated in instances where the employer retained the entire amount of all tips received *above* the minimum wage, or deducted the tips from the amount of any wages he agreed to pay in excess of the specified minimum. It does not apply to male employees or persons employed in businesses other than those mentioned.

Further, it is not necessary to conclude that the statute authorizes tipping. It does not purport to authorize or legalize the retention or deduction of the tips received by the employees. It is nothing more than a comprehensive regulation in respect to advising the public of the retention of tips by the employer whether such retention is legal or not, the essential requirement being that the public be informed of the practice. Fairly interpreted, the posting of the notice is required regardless of whether such retention or deduction is being made from the minimum legal wage fixed by section 3. It may be said that section 3 given a liberal meaning to effectuate the ends in view, prohibits the retention by the employer of any amount of tips received by the employee below the minimum wage, because if the employer could retain such tips he would be, in effect, accomplishing indirectly that which he could not do directly, namely, including the tips in the legal wage. It would be a subterfuge for him to receive all the tips and pay the minimum wage. The end result would be counting the tips as a part of the legal wage. That conclusion does not mean that section 3 and the statute are inconsistent to that extent. The purpose of the statute and section 3 are entirely different. The statute does not purport to cover the special field of tipping in regard to its effect on the minimum wage law. It is aimed at the protection of the public against fraud.

For the same reasons the historical arguments advanced by plaintiffs are not persuasive. True, a statute was enacted in 1917 (Stats. 1917, p. 257) which made it unlawful for an employer to demand tips received by his employee in consideration of the latter's being hired or retained. That act, like the 1929 act, was broad in its scope and did not pur-

port to affect tipping in relation to minimum wages. It was declared invalid in *In re Farb*, 178 Cal. 592 [174 P. 320, 3 A.L.R. 301], and thereafter the 1929 act was passed. Both of those statutes were aimed at the prevention of a fraud on the public and were not concerned with the effect on the inclusion of tips in minimum wages and the purpose of section 3 of said Order 12-A. If it be assumed that the Legislature in passing the 1929 statute was endeavoring to avoid the difficulty encountered with reference to the 1917 act in *In re Farb, supra,* still it did not purport to authorize the deduction of tips from the minimum wage. It was regulating the retention of tips by employers regardless of whether such retention was or was not a violation of section 3 of Order 12-A. The statute and the order were designed for fundamentally different purposes.

Plaintiffs urge that because the predecessors in office of defendants did not enforce section 3 of Order 12-A, they must have considered it annulled by the 1929 statute, and some of the plaintiffs having been so advised by executive officers of defendants predecessors, the statute should be interpreted to annul said section 3. It is undoubtedly a rule of statutory interpretation that the construction given a statute by the administrative agency charged with the enforcement of it is a significant factor to be considered by the courts in ascertaining the meaning of such statute. (*Los Angeles County* v. *Superior Court*, 17 Cal.2d 707 [112 P.2d 10]; 23 Cal.Jur. 776-7.) But where there is no ambiguity and the interpretation is clearly erroneous, such administrative interpretation does not give legal sanction to a long continued incorrect construction. The administrative interpretation cannot alter the clear meaning of a statute. (*Los Angeles County* v. *Superior Court, supra;* 23 Cal.Jur. 776.) We have seen that the 1929 statute does not purport to legalize the deduction or retention of tips by an employer, nor does section 3 of Order 12-A prohibit tipping; it merely prohibits the inclusion of tips in the minimum wage for certain employees. The alleged implied nullification which is not favored in the law does not exist.

The trial court found: "... that in adopting section 3 of Order 12A ... defendant ... acted in excess of its jurisdiction." That finding is not, as claimed by plaintiffs, binding upon this court, inasmuch as it is a conclusion of law. In

support of it plaintiffs challenge the constitutionality of section 3, and the validity of the adoption of the order.

Plaintiffs contend that section 3 is invalid because it is an unconstitutional interference with the freedom of contract as between employer and employee. (United States Const., Fourteenth Amendment; Cal.Const., art. I, secs. 1, 13; art. XX, sec. 18.) The main premise relied upon by plaintiffs is that section 3 prohibits an employer and his employee from agreeing that the former shall retain all tips received by the latter, citing *In re Farb, supra,* declaring unconstitutional the 1917 act (*supra*), and denouncing such practice. It has heretofore been pointed out that the 1917 act was not aimed at and did not involve any restrictions on such contracts directly as a part and in aid of the minimum wage requirements. The 1917 act applied expressly to any and all employees without regard to whether a legal wage was fixed for them. For that reason we do not consider the Farb case as necessarily supporting plaintiffs' position. Furthermore, the reasoning of the Farb case is out of line with the later authorities upholding minimum wage legislation. (See *United States* v. *Darby,* 312 U.S. 100 [61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430]; *West Coast Hotel Co.* v. *Parrish,* 300 U.S. 379 [57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330]; 31 Am. Jur., Labor, sec. 503; 130 A.L.R. 273; 132 A.L.R. 1443.) There is a distinct difference between a comprehensive prohibition of retention of tips by employers, and the prohibition of such practice as a part of an order fixing minimum wages.

It must be remembered that in the field of regulation of wages and hours by legislative authority, constitutional guarantees relating to freedom of contract must give way to reasonable police regulations. The Supreme Court of the United States in discussing the regulation of hours and wages of women employees stated in *West Coast Hotel Co.* v. *Parrish, supra,* at 392:

''This power under the Constitution to restrict freedom of contract has had many illustrations. That it may be exercised in the public interest with respect to contracts between employer and employee is undeniable. Thus statutes have been sustained limiting employment in underground mines and smelters to eight hours a day (*Holden* v. *Hardy,*

169 U.S. 366 [18 S.Ct. 383, 42 L.Ed. 780]; in requiring redemption in cash of store orders or other evidences of indebtedness issued in the payment of wages (*Knoxville Iron Co.* v. *Harbison*, 183 U.S. 13 [22 S.Ct. 1, 46 L.Ed. 55]); in forbidding the payment of seamen's wages in advance (*Patterson* v. *Bark Eudora*, 190 U.S. 169 [23 S.Ct. 821, 47 L.Ed. 1002]); in making it unlawful to contract to pay miners employed at quantity rates upon the basis of screened coal instead of the weight of the coal as originally produced in the mine (*McLean* v. *Arkansas*, 211 U.S. 539 [29 S.Ct. 206, 53 L.Ed. 315]); in prohibiting contracts limiting liability for injuries to employees (*Chicago, B. & Q. R. Co.* v. *McGuire supra* [219 U.S. 549 (31 S.Ct. 259, 55 L.Ed. 328)]); in limiting hours of work of employees in manufacturing establishments (*Bunting* v. *Oregon*, 243 U.S. 426 [37 S.Ct. 435, 61 L.Ed. 830]); and in maintaining workmen's compensation laws (*New York Central R. Co.* v. *White*, 243 U.S. 188 [37 S.Ct. 247, 61 L.Ed. 667]; *Mountain Timber Co.* v. *Washington*, 243 U.S. 219 [37 S.Ct. 260, 61 L.Ed. 685]). In dealing with the relation of employer and employed, the Legislature has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression. *Chicago, B. & Q. R. Co.* v. *McGuire, supra,* p. 570." And at page 399:

"The legislature had the right to consider that its minimum wage requirements would be an important aid in carrying out its policy of protection. The adoption of similar requirements by many States evidences a deepseated conviction both as to the presence of the evil and as to the means adapted to check it. *Legislative response to that conviction cannot be regarded as arbitrary or capricious, and that is all we have to decide.* Even if the wisdom of the policy be regarded as debatable and its effects uncertain, still the legislature is entitled to its judgment." (Emphasis added.) Many other illustrations could be given. In the recent case of *Williams* v. *[Jacksonville] Terminal Co.*, 315 U.S. 386 [62 S.Ct. 659, 86 L.Ed. 914], the court had before it the question of whether the tips received by red caps could be counted as a part of the minimum wage under the Fair Labor Standards Act (29 U.S.C.A. 201 et seq.) It was held

that they could and that legally speaking such tips were wages under the agreement between the employer and employee. However, the court was careful to point out that the Fair Labor Standards Act did not prohibit the inclusion of tips in the minimum wage, and it recognized that such a prohibition might well be valid. It stated at page 388:

"The Fair Labor Standards Act is not intended to do away with tipping. Nor does it appear that Congress intended by the general minimum wage to give the tipping employments an earnings-preference over the nonservice vocations. The petitioners do not dispute the railroad's contention that, during the entire period, each red cap received as earnings—cash pay plus tips—a sum equal to the required minimum wage. Nor is there denial of increased pay to the red caps on account of the minimum wage guarantee of the challenged plan as compared with the former tipping system. The guarantee also betters the mischief of irregular income from tips and increases wage security. *The desirability of considering tips in setting a minimum wage, that is whether tips from the viewpoint of social welfare should be counted as part of that legal wage, is not for judicial decision. We deal here only with the petitioners' assertion that the wages Act requires railroads to pay the red caps the minimum wage without regard to their earnings from tips.*" (Emphasis added.)

The presumption is that the Legislature had adequate and reasonable basis for its police regulations and that a statute providing for such regulations is constitutional (5 Cal.Jur. 628, et seq.), and, as expressed in *West Coast Hotel Co.* v. *Parrish, supra,* the only question to be decided is whether it acted arbitrarily or capriciously. There may be others, but certain reasonable grounds appear for the policy established by section 3 of Order 12-A. As we have seen from the foregoing quotation from *Williams* v. *Terminal Co., supra,* that possibility is recognized where the court declared that whether the social welfare required that tips be not counted as part of the minimum wage was not for "judicial decision." It cited for that statement, Anderson, *Tips & Legal Minimum Wages,* XXXI American Labor Legislation Review 11, at page 13, where it was aptly said that if the tips received were to be counted as a part of the minimum

wage ". . . the employee would be required to report to her employer the amount of tips received each week, in order that he in turn could know the amount of wage he must pay to make up the $16.

"If this practice were followed the purpose of the minimum-wage law would soon be defeated. It would not be long before employers discovered which of their employees were costing them the most money. Obviously, the girls who received the least in tips would have to be paid the highest wages to make up the $16. Gradually the girls receiving low tips would be dismissed, whether efficient or not, and those with ability to wile larger tips from an irresponsible public would be employed in their places. The workers would be no slower than the employers in discovering the effects of the reporting system on their welfare. The dismissal of one or two workers would be sufficient to warn the others that if they were to retain their jobs their tips must equal those of their more fortunate co-workers. There is always one effective way out of a situation like this for a worker who is desperately in need of a job, and that is to report to the employer a greater amount of tips than actually is received. The whole purpose of the minimum wage law, that of guaranteeing the worker a living wage, would be defeated if this practice were permitted and the State authorities would be almost helpless to correct the situation. To prevent just this kind of abuse, most State minimum-wage orders for hotels and restaurants contain a provision that under no circumstances shall tips be counted as a part of the legal minimum wage." In order that the welfare of the employees be advanced and the benefits of the minimum wage law be preserved, it may well be said that section 3 has a reasonable basis. If the employees may be induced, and in effect coerced, by fear of dismissal by an employment contract requiring the tips to be counted as a part of the minimum wage, to report their tips as equal to the minimum wage even though they are not, the minimum wage requirement is seriously undermined. By indirect method they would be forced into a position of receiving less than the standard fixed. If the employer is permitted to retain the tips in an amount equal to the minimum wage, which as seen would be a violation of section 3, the same condition would exist. The fear of dismissal might well coerce the employees to turn over as tips

a portion of their own funds when the tips received were not equal to the legal wage. The effectiveness of the minimum wage law would be thus impaired. With the employer prevented from retaining tips in the amount of the minimum legal wage, a salutary result would follow. The benefits of the minimum wage law would be preserved, and the dignity of the laborer and his social position would be advanced by relieving him of the necessity of resorting to the undignified conduct encouraged by the tipping practice.

The Legislature clearly sets forth the purpose sought to be obtained by the fixing of minimum wages as that adequate to supply the necessary cost of proper living and to maintain the health and welfare of the employees. (Lab. Code, sec. 1182.) We perceive that that purpose may be thwarted if tips may be included in the minimum wage.

The foregoing discussion does not mean that tips may not be considered wages under certain circumstances such as, computation of compensation under workmen's compensation laws. (*Hartford Acc. & Indem. Co.* v. *Industrial Acc. Com.*, 41 Cal.App. 543 [183 P. 234]; 29 Cal.L.Rev. 774; 75 A.L.R. 1223, and generally *Williams* v. *Terminal Co.*, *supra.*) An employer may permit his employee to retain the tips and the arrangement may be that they shall be compensation, but section 3 is aimed at the evils above-mentioned in connection with *minimum wages*, and merely because tips may be termed wages under certain circumstances does not mean that they may be counted as part of the minimum wage where to do so would contravene the policy of section 3 and permit the evils there denounced.

In their contention that section 3 is not uniform and is discriminatory (United States Const., Fourteenth Amendment; Cal.Const., art. I, sec. 21; art. IV, sec. 25), plaintiffs suggest that section 3 would not be violated if the employment contract called for all tips to be retained by the employer, citing *Settrie* v. *Falkner*, Commerce Clearing House Labor Law Service, 3d ed. sec. 60, 779. Apparently that case does not appear in the reporter system nor the Ohio Appellate Reports, but in any event we are not persuaded by its reasoning. Section 3 does present such a situation.

Section 3 creates no improper discrimination in respect to employers or the employees affected. The particular evils

at which it is aimed are a part of the minimum wage policy and must be viewed in that light, hence it applies only to situations where such wages are fixed. A reasonable classification has been made. There are many instances where classifications with reference to wages and hours have been upheld. (See *Matter of Application of Martin,* 157 Cal. 51 [106 P. 235, 26 L.R.A. N.S. 242], hours of employment in underground mines; *Matter of Application of Miller,* 162 Cal. 687 [124 P. 427], hours of labor for women but not men.) It is said in 31 Am.Jur., Labor, sec. 414:

"The relation of employer and employee has long been the basis for specific legislation, and statutes applicable only to such relation are not subject to the objection that they constitute class legislation. Moreover, the equal protection of the laws is not denied by the classification of occupations if such classification has a reasonable basis. Such classification may be based upon matters which are personal to the individuals who are acting as employees. For example, statutory regulations with reference to labor of women or children or both may be sustained as against the objection that they constitute an arbitrary discrimination because they do not extend to men. Moreover, the classification may be based not only on the character of the employees but upon the nature of the employer's business, since the character of the work may largely depend upon the nature and the incidents of the business in connection with which the work is done. A statute dealing with employees in a particular line of business does not create an arbitrary discrimination merely because the operation of the statute is not extended to other lines of business having their own circumstances and conditions, or to domestic service."

 It is contended that there was no finding by the Industrial Welfare Commission as a basis for its Order 12-A, and that such finding was necessary to the validity of said order; that is, that the wages fixed were adequate to supply the cost of proper living as specified in the minimum wage law at the time of its adoption. (Stats. 1913, p. 632, as amended.) That contention must necessarily be limited to the claim that such finding must appear in the order itself inasmuch as the appeal is on the judgment roll alone and hence all of the court's findings must be deemed to have been supported by the evidence. Plaintiffs, respondents herein, are bound by those

findings. The trial court found that the order was adopted by the commission pursuant to and under the authority of the minimum wage laws; that on "June 8, 1923, the . . . Commission promulgated Order 12-A for the hotel and restaurant industries. That *prior to the formulation and adoption* of said Order 12-A, and in the manner and form prescribed by statute, a conference denominated a wage board of the employers and employees of the said hotel and restaurant industries was called by said commission; that thereafter and prior to the adoption of said Order 12-A, and within the time and in the manner prescribed by law a public hearing was called and held upon said proposed Order 12-A, at which said meeting and wage board conference the employers and employees of said restaurant industry of the State of California were regularly represented.

"That at said public hearing and other meetings witnesses were sworn, testimony taken, and evidence received. It is further true that *every act and thing required by statute to be done by said Commission in the promulgation and adoption of said Order 12-A was done by said Commission within the time and in the manner and form required by statute."* (Emphasis added.) It was also found that the order was in full force and effect except as otherwise found in the findings referring to its constitutionality and implied repeal by the 1929 statute.

There have been decisions by the United States Supreme Court both ways upon the question of the necessity of findings by an administrative agency as a basis for a rule or regulation issued by it. In *Panama Ref. Co.* v. *Ryan,* 293 U.S. 388 [55 S.Ct. 241, 79 L.Ed. 446], findings were declared necessary to support a presidential order. The most recent holding by that court in *Pacific States Box & Basket Co.* v. *White,* 296 U.S. 176 [56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853], is that no findings are necessary where the statute does not require them to support the order of the Department of Agriculture of the State of Oregon fixing the sizes for containers of horticultural products, although a violation of the order is a misdemeanor. That holding is a definite departure from the broad rule announced in *Panama Ref. Co.* v. *Ryan, supra.* (See 49 Harv.L.Rev. 827.) Other cases have considered the question. (See *American Telephone & Telegraph Co.* v. *United States,* 14 F.Supp. 121; *Bayley* v. *Southland Gasoline Co.,* 131 F.2d 412; *Twin City Milk Producers Assn.* v. *Mc-*

*Nutt*, 122 F.2d 564.) We have not been referred to and have been unable to find any case in California on the subject, and while some of the federal court cases indicate that the findings must appear in the order, plaintiffs have suffered no prejudice. The findings of the trial court show that if findings were required by the statute the commission made them. The mere fact that they do not appear on the face of the order is not therefore of importance. The statute did not require that the findings appear on the face of the order. Section 6(c) of the act states merely that the order shall specify "the minimum wage for women and minors in the occupation in question, the maximum hours . . . and the standard conditions of labor. . . ." (Stats. 1913, p. 632, as amended Stats. 1921, p. 378.)

 The adoption of section 3 of Order 12-A was within the power and authority delegated to the Industrial Welfare Commission by the Legislature. The Constitution authorizes the Legislature to provide a minimum wage for women and minors and for the comfort, health, safety and general welfare of employees, and to confer upon a commission the authority it deems necessary to carry out those purposes. (Cal.Const., art. XX, sec. 17½.) The act under which Order 12-A was promulgated empowers the commission to fix "a minimum wage to be paid to women and minors engaged in any occupation, which shall not be less than a wage adequate to supply such women and minors the necessary cost of proper living and to maintain the health and welfare of such women and minors," and to establish the maximum working hours and the standard conditions of labor. (Stats. 1913, p. 632, sec. 6, as amended Stats. 1921, p. 378.) In our previous discussion of the constitutionality of section 3 we have shown that it had a direct relation to minimum wages and was a natural and important incident thereof. It is an incident of the establishment of minimum wages similar to the provisions in Order 12-A, which specify to what extent board and lodging furnished by the employer may be considered wages. The power to provide safeguards to insure the receipt of the minimum wage and to prevent evasion and subterfuge, is necessarily an implied power flowing from the power to fix a minimum wage delegated to the commission.

 It is true that an administrative agency may not, under the guise of its rule making power, abridge or enlarge its authority or exceed the powers given to it by the statute,

the source of its power. (*Boone* v. *Kingsbury*, 206 Cal. 148 [273 P. 797]; *California E. Com.* v. *Black-Foxe Military Inst.*, 43 Cal.App.2dSupp. 868 [110 P.2d 729]; *Hodge* v. *McCall*, 185 Cal. 330 [197 P. 86]; *Bank of Italy* v. *Johnson*, 200 Cal. 1 [251 P. 784].) However, "the authority of an administrative board or officer, . . . to adopt reasonable rules and regulations which are deemed necessary to the due and efficient exercise of the powers expressly granted cannot be questioned. This authority is implied from the power granted." (*Bank of Italy* v. *Johnson, supra,* 20.) (See, also, *Crawford* v. *Imperial Irrigation Dist.*, 200 Cal. 318 [253 P. 725]; 21 Cal.Jur. 874.) ▉▉▉ In the instant case the power to adopt section 3 may be implied as a power to make effective the order fixing the minimum wage. The power to fix that wage does not confine the agency to that single act. It may adopt rules to make it effective. Plaintiffs cite *Adolph Coors Co.* v. *Corbett*, (Cal.App.) 123 P.2d 74, decided by the District Court of Appeal. A hearing was granted by this court in that case and thereafter it was dismissed. It is not a controlling authority.

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., and Edmonds, J., concurred.

Traynor, J., and Schauer, J., did not participate herein.

Respondents' petition for a rehearing was denied July 15, 1943. Traynor, J., and Schauer, J., did not participate therein.