[No. B147481. Second Dist., Div. Five. Sept. 18, 2001.]

CONSUMER CAUSE, INC., Plaintiff and Appellant, v.
WEIDER NUTRITION INTERNATIONAL, INC., et al., Defendants and
Respondents.

**COUNSEL**

Morse Mehrban for Plaintiff and Appellant.

Livingston & Mattesich Law Corporation, Gene Livingston and Rebecca M. Ceniceros for Defendants and Respondents.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General, Craig Thompson, Edward G. Weil and Susan S. Fiering, Deputy Attorneys General, for State of California as Amicus Curiae.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

This appeal concerns the Safe Drinking Water and Toxic Enforcement Act of 1986 (the act), Health and Safety Code[1] sections 25249.5 through 25249.13, commonly known as Proposition 65 which was adopted by the voters in the November 4, 1986 General Election. At issue is the language of section 25249.6, which prohibits the knowing and intentional exposure of any person to a cancer-causing chemical without first providing a warning, except as provided in section 25249.10. Defendants, Weider Nutrition International, Inc., Weider Nutrition Group, Inc., and Weider Health & Fitness, produce products containing dehydroepiandrosterone (DHEA) and Androstenediols (Andro). DHEA and Andro are not contained on the list of chemicals known to the state to cause cancer. But after DHEA and Andro are ingested, a chemical reaction occurs which increases the natural levels of testosterone in the body. Testosterone can cause cancer. The parties disagree

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

whether defendants must give the "clear and reasonable warning" mandated by section 25249.6 and draw upon issues relating to voter intent as well as statutory and regulatory language in their briefs. However, we agree with the position of the Attorney General that the controlling rule of law is California Code of Regulations, title 22, section 12201, subdivision (f)[2] which defines exposure for purposes of the act. In our view, although the issue is close, the Attorney General correctly reasons that defendants' products, which are noncarcinogenic, do not *expose* a consumer to cancer within the meaning of the act. Therefore, we affirm the dismissal which followed the entry of an order sustaining the demurrer without leave to amend.

## II.   PROCEDURAL BACKGROUND

In reviewing a demurrer dismissal, all well-pleaded factual allegations must be assumed as true. (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 495-496 [93 Cal.Rptr.2d 327, 993 P.2d 983]; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) On July 31, 2000, plaintiff, Consumer Cause, Inc., sued defendants, alleging that they had violated section 25249.6 by knowingly and intentionally exposing California residents to certain chemicals known to the state to cause cancer as set forth in regulation 12000, subdivision (b) without giving the required warning. The complaint alleges that California residents are exposed to the chemicals as a result of acquiring, purchasing, storing, consuming, or other reasonably foreseeable use of consumer products which defendants manufacture, distribute, and sell as tablets, pills, capsules, caplets, powders, and liquid containing DHEA and Andro. It is alleged that the use of defendants' products exposes the user to testosterone, a chemical known to the State of California to cause cancer as provided in regulation 12000, subdivision (b). The ingestion of defendants' products increases the level of testosterone in the consumer's body to a level that is above and beyond what is safe, healthy, and normal. The parties stipulated that defendants' products do not contain testosterone.

On October 27, 2000, defendants demurred on the ground the complaint failed to set forth sufficient facts to state a cause of action against them in that their products do not expose any substance that is known to the State of California to cause cancer and none of their products were listed in regulation 12000, subdivision (b). Defendants argued the complaint violated: the express language of the act; the intent of Proposition 65; and their due process rights. On January 10, 2001, the demurrer was sustained without

---

[2]For purposes of clarity, all future references to title 22 of the California Code of Regulations shall be referred to as "regulation."

leave to amend and the case was dismissed pursuant to Code of Civil Procedure section 581, subdivision (f)(1).

## III. DISCUSSION

### A. *The Standard of Review*

Our task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) We assume the truth of allegations in the complaint which have been properly pleaded and give the complaint a reasonable interpretation by reading it as a whole and with all its parts in their context. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 558 [71 Cal.Rptr.2d 731, 950 P.2d 1086]; *People ex rel. Lungren v. Superior Court, supra,* 14 Cal.4th at p. 300.) However, the assumption of truth does not apply to contentions, deductions, or conclusions of law and fact. (*People ex rel. Lungren v. Superior Court, supra,* 14 Cal.4th at pp. 300-301; *Moore v. Regents of University of California, supra,* 51 Cal.3d at p. 125.) Furthermore, any allegations that are contrary to the law or to a fact of which judicial notice may be taken will be treated as a nullity. (*Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143 [39 Cal.Rptr.2d 752]; *Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955 [199 Cal.Rptr. 789].) The Supreme Court has held: "On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory. [Citations.] If there is a reasonable possibility that the defect in a complaint can be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend. [Citation.] The burden is on the plaintiff; however, to demonstrate the manner in which the complaint might be amended. [Citation.]" (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1]; *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].)

### B. *The Trial Court Correctly Sustained the Demurrer*

The act requires the Governor to develop a list of chemicals known to cause cancer or reproductive toxicity. (§ 25249.8.) The Governor is also required to designate a lead agency to implement the provisions of the act. (§ 25249.12.) The responsibility for implementing the act is currently with the Office of Environmental Health Hazard Assessments, which had in 1991

been transferred to the newly created California Environmental Protection Agency. (See *People ex rel. Lungren v. Superior Court, supra,* 14 Cal.4th at p. 310, fn. 6.) Prior to 1991, the Health and Welfare Agency had been designated as the lead agency. The lead agency has the power to adopt and modify regulations, standards, and permits, which are necessary to conform with and implement the act and its purposes. (§ 25249.12.) The lead agency has set forth the list of chemicals known to cause cancer in regulation 12000, subdivision (b) as required by section 25249.8. Testosterone is one of the chemicals on the list recognized as carcinogenic.

Section 25249.6 provides: "No person in the course of doing business shall knowingly and intentionally *expose* any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10." (Italics added.) The act does not define expose. However, regulation 12201, subdivision (f) defines "expose" as follows: "The term 'expose' means to cause to ingest, inhale, contact via body surfaces or otherwise come into contact with a chemical. An individual may come into contact with a chemical through water, air, food, consumer products and any other environmental exposure as well as occupational or workplace exposures." In adopting regulation 12201, subdivision (f), the Health and Welfare Agency gave the following explanation: "It has been assumed by some that this exposure prohibition, like the prohibition on certain discharges or releases in the Act, is directed at drinking water exposure. There is nothing in the language or the history of the Act to support such a limited interpretation of the exposure prohibition. Therefore, the Health and Welfare Agency has broadly defined the term 'expose' to include all anticipated means of bringing individuals into contact with chemicals. Examples of these means are provided to further clarify that the Act prohibits all means of *directly bringing individuals into contact* with chemicals known to the state to cause cancer or reproductive toxicity without clear and reasonable prior warning." (Cal. Health and Welfare Agency, Final Statement of Reasons, 22 Cal. Code of Regulations, div. 2, Safe Drinking Water and Toxic Enforcement Act of 1986 (1988) p. 29, italics added.)

In determining the meaning of the term "expose" as in section 25249.6, judicial analysis must begin with an examination of the act. ▮ We examine a regulation utilizing the same standards as we apply in cases of statutory construction and interpretation. (*Cal. Drive-In Restaurant Assn. v. Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028]; *Head v. Civil Service Com.* (1996) 50 Cal.App.4th 240, 243 [57 Cal.Rptr.2d 857].) As the Supreme Court explained in a case involving the construction of the

act: " 'Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' [Citation.] Of course, in construing the statute, '[t]he words . . . must be read in context, considering the nature and purpose of the statutory enactment.' [Citation.]" (*People ex rel. Lungren v. Superior Court, supra,* 14 Cal.4th at p. 301; accord, *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 378-379 [33 Cal.Rptr.2d 63, 878 P.2d 1275].)

The Attorney General argues that no exposure within the meaning of the act occurs when defendants' products are used. DHEA and Andro are not listed chemicals nor do they cause cancer. The Attorney General is correct that plaintiff's sole theory is that defendants' products increase the level of testosterone, which is a listed chemical and is carcinogenic under some circumstances. Regulation 12201, subdivision (f) defines the term "expose" as causing one "to ingest, inhale, contact via body surfaces or otherwise come into contact with a chemical." The Attorney General reasons: "While the regulation provides examples of types of exposure, e.g., ingestion, inhalation, each type is inextricably tied to the phrase 'come into contact[.]' 'Contact' occurs at the first point at which the body connects with a chemical from outside the body. It does not include what happens inside the body to transform the chemical into something else." The analysis of the Attorney General is consistent with the aforementioned statement of reasons given by the lead agency in adopting regulation 12201, subdivision (f). As noted previously, the Health and Welfare Agency stated, "[T]he Act prohibits all means of directly bringing individuals into contact with chemicals known to the state to cause cancer . . . ." When defendants' products initially come into human contact, they do not cause cancer. It is only as a result of chemical reactions within the body that the natural level of a listed substance, testosterone, is increased to potentially carcinogenic levels. We agree with the foregoing analysis of the Attorney General. It harmonizes the act and its regulations as a whole and provides a commonsense test for evaluating whether a chemical must provide the statutorily mandated warnings.

Further, we have carefully reviewed the voter pamphlet prepared in connection with Proposition 65. The summary prepared by the Attorney General states in pertinent part: "REQUIREMENT OF NOTICE OF PERSONS' *Exposure* TO TOXICS. . . . Provides persons doing business shall neither *expose* individuals to chemicals known to cause cancer . . . without first giving clear and reasonable warning . . ." (Ballot Pamp., Gen. Elec. (Nov. 4, 1986) Summary Prepared by the Attorney General, p. 52, italics added.)

The Legislative Analyst analysis states in part, "[T]he measure generally would require those businesses to warn people before knowingly and intentionally *exposing* them to chemicals that cause cancer . . . ." (Ballot Pamp., Gen. Elec., *supra*, Analysis by the Legislative Analyst, p. 52, italics added.) The argument in favor of Proposition 65 states in relevant part: "Proposition 65 also tells businesses: Don't *expose* us to any of the same chemicals without first giving us a clear warning. We each have a right to know, and to make our own choices about being *exposed* to these chemicals." (Ballot Pamp., Gen. Elec., *supra*, argument in favor of Prop. 65, p. 54, italics added.) The rebuttal argument in support of Proposition 65 states in pertinent part: "Proposition 65 simply says that businesses shouldn't put chemicals that are scientifically known to cause cancer, or birth defects, into your drinking water. And that they must warn you before they *expose* you to such a chemical." (Ballot Pamp., Gen. Elec., *supra*, rebuttal argument in favor of Prop. 65, p. 55, italics added.) As can be noted, the arguments in favor of Proposition 65 focus on exposure to carcinogenic chemicals. Regulation 12201, subdivision (f) defines exposure in terms of a chemical, such as defendants' products, coming into contact with a person. There is nothing in the ballot statement which suggests Proposition 65 was intended to apply when a person is exposed to a noncarcinogenic chemical which then causes a substance naturally occurring in the body to become carcinogenic. In the absence of anything in the statutory language, regulations, or the Proposition 65 voter pamphlet indicating the act was to apply in these circumstances, the trial court correctly sustained the demurrer *without leave to amend.*

We recognize that plaintiff presents some persuasive arguments. Most of those contentions rely upon section 1 of Proposition 65, which states: "The people of California find that hazardous chemicals pose a serious potential threat to their health and well-being, that state government agencies have failed to provide them with adequate protection, and that these failures have been serious enough to lead to investigations by federal agencies of the administration of California's toxic protection programs. The people therefore declare their rights: [¶] (b) To be informed about exposures to chemicals *that cause cancer, birth defects, or other reproductive harm.* [¶] (c) To secure strict enforcement of the laws controlling hazardous chemicals and deter actions that threaten public health and safety." (Ballot Pamp., Gen. Elec., *supra*, Text of Proposed Law, p. 53, italics omitted.) However, *the statement of voter intent does not resolve the question of what constitutes exposure.* In fact, the statement of voter intent, when speaking to the disclosure requirement which ultimately appears in section 25249.6, refers to a right *to be informed* "about exposures to chemicals that cause cancer . . . ." (*Ibid.*, italics omitted.) No doubt, the remaining portion of section 1 of Proposition

65 speaks to the issue of chemicals that cause cancer and the like. Coupled with the broad construction to be accorded the act (*People ex rel. Lungren v. Superior Court, supra*, 14 Cal.4th at p. 314), this analysis quite arguably supports plaintiff's theory that defendants should warn about the carcinogenic dangers of using their products that can play a role in causing cancer. However, the act also states that the required warning is mandated only when there is an exposure to a chemical known to cause cancer and grants to the lead agency the authority to define the initiative's terms. (§§ 25249.6, 25249.12.) The lead agency has not defined exposure to include a situation such as is present in this case. Although plaintiff's argument has ponderable logical force, the contention of the Attorney General is more plausible.

## IV. DISPOSITION

The judgment is affirmed. Defendants, Weider Nutrition International, Inc., Weider Nutrition Group, Inc., and Weider Health & Fitness, shall recover their costs incurred on appeal from plaintiff, Consumer Cause, Inc.

Grignon, J., and Armstrong, J., concurred.

On October 16, 2001, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 19, 2001. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.