Filed 5/19/15  County of L.A. v. Superior Gunite, Inc. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| COUNTY OF LOS ANGELES,<br><br>    Cross-complainant and Appellant,<br><br>v.<br><br>SUPERIOR GUNITE, INC.,<br><br>    Cross-defendant and Respondent. | B254801<br>(Los Angeles County<br>Super. Ct. No. BC446694) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard Fruin, Jr., Judge.  Reversed and remanded with directions.

Greenberg, Whitcombe, Takeuchi, Gibson & Grayver, Richard Greenberg, Michael J. Weinberger and Aaron M. Lavine; Office of the County Counsel, Richard D. Weiss, Acting County Counsel, Robert C. Cartwright, Assistant County Counsel, Rosa Linda Cruz, Senior Deputy County Counsel, for Cross-complainant and Appellant.

Castle & Associates, Nomi L. Castle, David C. Romyn and Marian K. Selvaggio for Cross-defendant and Respondent.

In the underlying action, appellant County of Los Angeles (the County) asserted a cross-claim under the California False Claims Act (CFCA; Gov. Code, § 12650 et seq.) against respondent Superior Gunite, Inc. (SGI), together with a related cross-claim for interference with contract.[1]  The trial court sustained SGI's demurrer to the County's second amended cross-complaint and granted its motion to strike without leave to amend, concluding that the County's claims were legally untenable.  We reverse and remand the matter for further proceedings.

**RELEVANT PROCEDURAL BACKGROUND**

In September 2011, Accent Builders, Inc. (ABI) filed a complaint against the County and the La Plaza de Cultura y Artes Foundation (the Foundation), asserting breach of contract and other claims arising from a restoration project involving two historic buildings in downtown Los Angeles.  ABI's complaint alleged that the County and the Foundation failed to pay ABI for work performed on the project.[2]

In July 2012, the County filed its original cross-complaint against ABI and SGI, asserting claims related to the contract underlying ABI's complaint.  The County alleged that ABI and SGI were alter egos under common ownership, that ABI served as SGI's "instrumentality or conduit . . . in the pursuit of a single business venture," and that ABI and SGI "disregarded the separate nature of the corporations" in performing work under the contract.

In September 2012, the County filed a first amended cross-complaint (FACC) containing claims against SGI for violations of the CFCA and interference with contract.  The FACC alleged that in 2004, the County leased the historic

---

[1]     All further statutory citations are to the Government Code, unless otherwise indicated.

[2]     The underlying action was later consolidated with several related actions to which the County is not a party.

2

buildings to the Foundation to establish a museum.  In December 2006, the County and the Foundation entered into the above-described contract with ABI for the restoration and seismic retrofitting of the buildings.  The FACC alleged that ABI, with the assistance of SGI's employees, submitted "approximately 130 requests seeking payment" -- identified as "[c]hange [e]stimates" and "time extension requests" -- that constituted false claims under the CFCA.  (Uppercase omitted.) The FACC further alleged that SGI interfered with the contract by soliciting subcontractors to submit claims to the County "without regard to whether the claims were valid."

Relying on *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720 (*Fassberg Construction*), SGI demurred to the FACC, contending the CFCA claim failed because the change estimates and time extension requests did not constitute "false claims" under the CFCA; in addition, SGI argued that the FACC did not plead the purported false claims with specificity sufficient for a CFCA claim.  SGI further contended the claim for interference with contract failed because it was derivative of the defective CFCA claim.  Accompanying the demurrer was a motion to strike the FACC's allegations regarding the time extension requests.  The trial court sustained the demurrer and granted the motion to strike, but afforded the County leave to amend its claims.

In August 2013, the County filed its second amended cross-complaint (SACC), which again asserted claims against SGI for violation of the CFCA and interference with contract.[3]  SGI demurred to the SACC on the grounds that its allegations failed to cure the defects in the FACC; in addition, SGI filed a motion to strike the SACC's allegations regarding the time extension requests.  In

---

[3]    The SACC, like the FACC, also asserted a CFCA claim and a claim for breach of contract and fiduciary duty against ABI.

3

opposing the demurrer and motion to strike, the County requested that the trial court take judicial notice of ABI's complaint, arguing that its allegations showed that ABI regarded the change estimates as demands for payment.

The trial court sustained SGI's demurrer without leave to amend, concluding that under *Fassberg Construction,* the SACC stated no CFCA claim, and that the interference with contract claim therefore also failed. The court also granted SGI's motion to strike without leave to amend. On January 7, 2014, a judgment of dismissal was entered in favor of SGI and against the County. This appeal followed.

## DISCUSSION

The County contends the trial court erred in sustaining SGI's demurrer to the SACC and granting the motion to strike. For the reasons discussed below, we agree.

A. *Standards of Review*

"Because a demurrer both tests the legal sufficiency of the complaint and involves the trial court's discretion, an appellate court employs two separate standards of review on appeal. [Citation.] . . . Appellate courts first review the complaint de novo to determine whether . . . [the] complaint alleges facts sufficient to state a cause of action under any legal theory, [citation], or in other words, to determine whether . . . the trial court erroneously sustained the demurrer as a matter of law. [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 (*Cantu*).) "Second, if a trial court sustains a demurrer without leave to amend, appellate courts determine whether . . . the plaintiff could amend the complaint to state a cause of action. [Citation.]" (*Cantu*, *supra*, 4 Cal.App.4th at p. 879, fn. 9.)

4

Under the first standard of review, "we examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory. [Citation.]" (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 947.) We accept the truth of "all material facts which were properly pleaded," but not the truth of contentions, deductions, or conclusions of fact or law. (*Ibid*.) The complaint is also read "as containing the judicially noticeable facts" (*Cantu*, *supra*, 4 Cal.App.4th at p. 877), and in suitable circumstances, an appellate court may take judicial notice of facts not subject to judicial notice by the trial court (*Taliaferro v. County of Contra Costa* (1960) 182 Cal.App.2d 587, 592).

Under the second standard of review, the burden falls upon the plaintiff to show what facts could be pleaded to cure the existing defects in the complaint. (*Cantu*, *supra*, 4 Cal.App.4th at p. 890.) "To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action." (*Ibid*.)

In connection with the demurrer, SGI also asserted a motion to strike certain allegations in the SACC. Generally, when a portion of a claim is facially defective, it may be challenged by a motion to strike. (*PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1682-1683 (*PH II*).) The grant of such a motion without leave to amend is reviewed for an abuse of discretion. (See *Dawes v. Superior Court* (1980) 111 Cal.App.3d 82, 91.)

Here, the County neither offers nor suggests factual amendments to the SACC to cure the purported defects specified in SGI's demurrer and motion to strike. Our inquiry is thus focused primarily on questions of law, namely, whether the facts as alleged in the SACC are sufficient to state a CFCA claim and a claim

5

for interference with contract.[4]

B. *CFCA*

We begin by examining the CFCA, which permits the state and its political subdivisions to recover treble damages and civil penalties for certain acts, including the presentation of a "false claim" to the state or political subdivision. (*Rothschild v. Tyco Internat. (US), Inc.* (2000) 83 Cal.App.4th 488, 494-495; § 12561, subd. (a).) "The Legislature designed the CFCA '"to prevent fraud on the public treasury,"' and it '"should be given the broadest possible construction consistent with that purpose."' [Citations.]" (*San Francisco Unified School Dist. ex rel. Contreras v. Laidlaw Transit, Inc.* (2010) 182 Cal.App.4th 438, 446 (*San Francisco Unified School Dist.*), quoting *City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 801 (*City of Pomona*).) As the CFCA is patterned after the federal False Claims Act (31 U.S.C § 3729 et seq.), "authorities applying the federal act may be persuasive to the extent the language of the two acts is similar." (*Fassberg Construction*, *supra*, 152 Cal.App.4th at p. 735.)

Because the SACC alleges that SGI's false claims and related misconduct occurred in late 2009 and early 2010, the County's CFCA claim is potentially subject to two versions of the CFCA, as the Legislature amended the CFCA in 2009, with an effective date of January 1, 2010. (Stats. 2009, ch. 277, § 2, No. 7 West's Legis. Service, pp. 3366-3373; *San Francisco Unified School Dist.*, *supra*, 182 Cal.App.4th at p. 448, fn. 7.) Although the two versions of the CFCA define

---

[4] The County suggests in its reply brief that the SACC could be amended to allege additional facts and state a new theory of liability under the CFCA. As no such contention was raised in the opening brief, however, it has been forfeited. (*Horowitz v. Noble* (1978) 79 Cal.App.3d 120, 138-139; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-771.)

6

"'claim'" in materially similar terms -- namely, as "'any request or demand'" for money -- they differ in certain respects, as discussed below.[5]

Subdivision (a) of former section 12651 authorized the recovery of treble damages for enumerated acts, including false claims, and specified civil penalties. Pertinent here is the provision regarding false claims and the use of false records or statements to support such claims, which stated: "Any person who commits any of the following acts shall be liable . . . for three times the amount of damages which the state or the political subdivision sustains because of the act of that person. A person who commits any of the following acts . . . may be liable to the state or political subdivision for a civil penalty . . . for each false claim: [¶] (1) Knowingly presents or causes to be presented to an officer or employee of the state or of any political subdivision thereof, a false claim for payment or approval. [¶] (2) Knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision." (Former § 12651, subds. (a)(1), (a)(2).)

---

[5] Subdivision (b)(1) of former section 12650 stated: "'Claim' includes any request or demand for money, property, or services made to any employee, officer, or agent of the state or of any political subdivision, or to any contractor, grantee, or other recipient, whether under contract or not, if any portion of the money, property, or services requested or demanded issued from, or was provided by, the state . . . or by any political subdivision thereof . . . ."

In its current form, subdivision (b)(1) of that section states in pertinent part: "'Claim' means any request or demand, whether under a contract or otherwise, for money, property, or services, and whether or not the state or a political subdivision has title to the money, property, or services that meets either of the following conditions: [¶] (A) Is presented to an officer, employee, or agent of the state or of a political subdivision. [¶] (B) Is made to a contractor, grantee, or other recipient, if the money, property, or service is to be spent or used on a state or any political subdivision's behalf or to advance a state or political subdivision's program or interest . . . ."

7

*Fassberg Construction* identified certain requirements for causes of action founded on the provision quoted above. The central issue presented there was whether the provision authorized the recovery of civil penalties for the use of false records or statements in support of a false claim. (*Fassberg Construction, supra,* 152 Cal.App.4th at pp. 727, 736-743.) Following an analysis of the statutory language, the appellate court held that the provision authorized treble damages for knowingly presenting either a false claim or a false record or statement in support of such a claim, but authorized civil penalties only for false claims. (*Id*. at p. 727.) In so concluding, the court observed that recovery of either treble damages or a civil penalty required -- at minimum -- a "claim." (*Id*. at pp. 727, 736-737, 739 & fn. 13.)

The factual situation in *Fassberg Construction* is similar in some respects to that alleged in the County's cross-complaints. There, the housing authority of the City of Los Angeles entered into a contract with a contractor regarding the construction of some residential buildings. (*Fassberg Construction, supra,* 152 Cal.App.4th at p. 728.) The contract permitted the contractor to submit "change order proposals," that is, requests to modify the contract price or extend the time for performance. (*Id*. at p. 729.) During the construction project, the contractor submitted numerous change order proposals, as well as payroll reports and requests for "progress payment[s]." (*Id*. at pp. 738-742.) After the project's completion, the housing authority asserted a CFCA claim. (*Id*. at p. 730.) Following a jury trial, the housing authority prevailed on the claim, and recovered treble damages and civil penalties for the change order proposals, payroll reports, and requests for progress payments. (*Id*. at pp. 731-732.)

In reversing, the appellate court concluded (1) that former section 12651 authorized civil penalties solely for false claims, and (2) that only the requests for progress payments constituted claims, for purposes of an award of civil penalties.

8

(*Fassberg Construction*, *supra*, 152 Cal.App.4th at pp. 739-742.) The court otherwise determined that neither the change order proposals nor the payroll reports constituted claims, that is, requests or demands for money. (*Id*. at pp. 729-730.) In the case of the change order proposals, the court observed that their status presented a question of law, as there was no factual dispute regarding how the parties viewed them during the project. (*Id*. at pp. 740-741.) The contract specified that change order proposals were to be used to seek the housing authority's approval of project modifications, and the trial evidence established that during the project, the parties acted with the shared understanding that the housing authority had to approve a change order proposal and issue a written change order before the contractor could request payment for the work encompassed in the proposal. (*Ibid*.) In view of those facts, the appellate court determined that the change order proposals did not, in themselves, amount to requests or demands for money. (*Id*. at pp. 741-742.)

After *Fassberg Construction* was decided, the Legislature amended the CFCA. Effective January 1, 2010, subdivision (a) of section 12651 provides in pertinent part: "Any person who commits any of the following enumerated acts . . . shall be liable . . . for three times the amount of damages that the state or political subdivision sustains because of the act of that person. A person who commits any of the following enumerated acts . . . shall be liable . . . for a civil penalty . . . *for each violation*: [¶] (1) Knowingly presents or causes to be presented a false *or fraudulent* claim for payment or approval. [¶] (2) Knowingly makes, uses, or causes to be made or used a false record or statement *material to a false or fraudulent claim*." (Italics added.) Although the apparent effect of the amendments is to broaden potential liability for false claims and the use of records and statements to support such claims (see *In re Bank of New York Mellon Corp. Forex Transactions Litigation* (S.D. N.Y. 2014) 991 F.Supp.2d 479, 490

9

[discussing the current version of the CFCA]), they do not modify a key requirement for that liability, namely, the existence of a "claim" (*In re Bank of New York Mellon Corp. False Claims Act Litigation* (N.D. Cal. 2012) 851 F.Supp.2d 1190, 1195-1197, 1199 (*Bank of New York*)).

### C. *Analysis*

We turn to the rulings on SGI's demurrer to the SACC and motion to strike. As explained below, we conclude the SACC states tenable claims against SGI, and that the motion to strike was improperly granted (see pts C.2, C.3 & C.4. *post*).

### 1. *Facts*[6]

The SACC alleges the following facts:  The underlying contract established a  "guaranteed maximum price" for the project of $19,142,248, and required completion of the project within 426 days of its commencement, absent adjustments in the price or completion date by change orders from the County. The contract provided for progress payments and final payment upon completion of the project.

During the project, the County issued change orders that increased the guaranteed maximum price to $21,258,932, and granted ABI an additional 217 days in which to complete the project.  On October 7, 2009, ABI submitted Pay Application No. 28, which stated that as of September 30, 2009, the total of work and labor completed was $21,542,557.  Regarding that sum, the pay application asserted that $18,757,987 had been paid, that $1,777,349 was held as "retainage,"

---

[6]     Our summary of the facts is informed by the relevant provisions of the underlying contract, as the contract is the foundation of the County's claims, and the SACC incorporates by reference the copy of the contract attached to it.  (*City of Pomona*, *supra*, 89 Cal.App.4th at p. 800.)

and that the payment then due was $1,007,221.[7] (Uppercase omitted.) The County paid the requested sum. In December 2009, the project was substantially completed.

The SACC alleges that after presenting Pay Application No. 28, in late 2009 and early 2010, ABI submitted 130 claims for payment seeking more than $5,200,000 for purported extra work performed during the project. These included 108 false claims for payment designated as "change estimates" and "time extension requests."

According to the SACC, those purported "change estimates" and "time extension requests" were not true change estimates. Under the contract, "change estimates" were customarily proposals tendered by ABI to the County prior to the County's authorization of the proposed work and materials, and prior to the completion of the proposed work. When such a change estimate involved or included an extension of the project's completion date, the contract permitted ABI to negotiate an increase in the contract price. However, with respect to the allegedly false claims set forth in the SACC, the purported "[c]hange [e]stimates" and "time extension requests" were not proposals regarding future work and materials, but were "intended . . . in and of themselves to induce payment . . . ." Although "[t]hey proposed an increase" in the contract price for the work described and sought "authorization to proceed," they concerned completed work addressed in prior pay applications, relied for support on information provided in prior pay applications, and were "requests for additional payment . . . ."

---

[7]    The SACC attributes the difference between the actual guaranteed maximum price and the total shown in the pay application to certain change orders not reflected in the pay application.

11

The SACC described 50 false requests for payment designated as "[c]hange [e]stimate[s]." All the requests concerned completed work, and 13 specifically addressed work for which the County had already made payment. The SACC further described 59 false claims for payment designated as requests for time extensions, many of which were submitted in connection with the purported change estimates. Those requests "were not submitted in connection with proposed work, but with regard to work that had been completed."

### 2. *CFCA Claim*

We begin with the cause of action under the CFCA. In sustaining SGI's demurrer, the trial court concluded that the SACC failed to allege that the change estimates and requests for time extensions constituted "claims," within the meaning of the CFCA. Our focus is on that determination.

At the outset, we address two preliminary issues material to our inquiry, namely, the scope of the application of the current version of the CFCA, which became effective on January 1, 2010, and the relevance of ABI's allegations in its complaint against the County. As to the former, it is unnecessary to determine the extent to which the CFCA cause of action is subject to the current version of the CFCA, as the amendments to the CFCA did not modify the pertinent elements of the law. The SACC asserts that the change estimates and request for time extensions submitted in late 2009 and early 2010 constitute false claims for payment under the CFCA, and seeks treble damages and civil penalties for each of them. As noted above (see pt. B., *ante*), both versions of the CFCA authorize treble damages and civil penalties for the presentation of false claims for payment.[8]

---

[8] The extent to which the current law is applicable to the alleged false claims submitted in late 2009 is also irrelevant for a second reason. Generally, "[a] demurrer
*(Fn. continued on next page.)*

As to the latter, the County urges us to examine ABI's complaint in assessing whether the SACC states a CFCA claim, arguing that the complaint shows that ABI, in asserting its contract-based claims against the County, regarded the change estimates at issue as demands for payment. The County further argues that because "SGI and ABI are alleged alter egos . . . , ABI's allegations are SGI's allegations."

We decline to consider ABI's complaint, as "a cross complaint must itself be sufficient and cannot be cured by the pleadings in the original action, that is, the complaint and answer, apart from permissible incorporation by reference." (*Berg v. Investors Real Estate Loan Co.* (1962) 207 Cal.App.2d 808, 816; accord, *Pine Terrace Apartments, L.P. v. Windscape, LLC* (2009) 170 Cal.App.4th 1, 17.) Here, the SACC does not incorporate the allegations in ABI's complaint; moreover, those allegations cannot be ascribed to SGI, as the record discloses no determination or finding that ABI and SGI are, in fact, alter egos (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1248 [application of alter ego doctrine requires factual determinations]).[9]

does not lie to a portion of a cause of action." (*PH II*, *supra*, 33 Cal.App.4th at p. 1682.) SGI's demurrer to the CFCA claim thus fails if the SACC's allegations regarding the change estimates and requests for time extensions in early 2010 state a claim under the current version of the CFCA. For the reasons discussed below, we conclude that they do so.

[9]     At SGI's request, we have augmented the record with the statement of decision, judgment, and related rulings regarding ABI's complaint against the County, which were filed after the judgment on the SACC. However, although SGI's brief on appeal mentions that ABI prevailed on its breach of contract claim against the County, SGI has not requested judicial notice of the court records in question, and does not suggest they demonstrate that the SACC states no claim. Because it is ordinarily improper for a court to take judicial notice of the truth of factual findings contained in a statement of decision or similar court record (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1050), we decline to do so on our own motion. We therefore exclude the court records from our analysis.

The key issue is thus whether the SACC itself adequately alleges the presentation of "claims," for purposes of the CFCA. To resolve that issue, we must look beyond the SACC's allegations that the change estimates and requests for time extensions constitute claims, as those are legal conclusions. Generally, to plead a cause of action, "a plaintiff is required . . . to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 245.) As CFCA actions sound in fraud, they are subject to heightened pleading requirements. (*State of California ex rel McCann v. Bank of America, N.A.* (2011) 191 Cal.App.4th 897, 906.) "'[T]he allegations of a [CFCA] complaint must be pleaded with particularity. The complaint must plead "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"'" (*State of California ex rel McCann, supra*, quoting *City of Pomona*, *supra*, 89 Cal.App.4th at p. 803.) In view of those requirements, the County was obliged to allege facts sufficient to show that the change estimates and requests for time extension, when presented to the County, constituted claims under the CFCA, that is, "request[s] or demand[s]" for money (§ 12650, subd. (b)(1)).

In an effort to satisfy that requirement, the SACC alleges that ABI's submissions, although styled as "[c]hange [e]stimates" and "time extension requests," were intended under the circumstances to directly elicit payments from the County. We find guidance from authority regarding the federal False Claims Act as to whether those allegations establish the existence of "claims," for purposes of the CFCA. Like the CFCA, the federal law authorizes recovery for false claims and false records or statements supporting such claims (31 U.S.C.A. § 3729(a)(1)), defines the term "'claim'" to include "any request or demand . . . for

14

money" (31 U.S.C.A § 3729(b)(2)(A)), and requires the existence of a claim for recovery (*U.S. v. Kitsap Physicians Service* (9th Cir. 2002) 314 F.3d 995, 1002 ["an actual false claim" is essential for liability under the False Claims Act]).[10] Because the term "'claim'" is construed broadly (*U.S. ex rel. Taylor v. Gabelli* (S.D. N.Y. 2004) 345 F.Supp.2d 313, 329), claims are not limited to invoices (*U.S. ex rel. Schwedt v. Planning Research Corp.* (D.C. Cir. 1995) 59 F.3d 196, 199 (*Schwedt*)).

*Schwedt* is instructive regarding the scope of the term "claim" under the federal False Claims Act. There, a federal agency entered into a contract with a supplier regarding the installation of a computer system and its software. (*Schwedt, supra,* 59 F.3d at pp. 197-198.) Later, in a *qui tam* action, the plaintiff asserted causes of action under the federal law, alleging (1) that the supplier submitted three progress reports falsely stating that certain software components had been fully delivered, and (2) that in connection with one progress report, the supplier also submitted an invoice for the relevant software component, which had been paid.[11] (*Schwedt, supra,* at p. 198.) The district court dismissed the bulk of the plaintiff's complaint, ruling that it stated no cause of action insofar as it relied on the three progress reports unattended by an invoice. (*Ibid.*) In reversing, the appellate court concluded that under the circumstances alleged in the complaint,

---

**10** The federal False Claims Act imposes liability on "any person who -- [¶] (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . ." (31 U.S.C.A. § 3729(a)(1).) Under that law, the term "'claim'" encompasses "any request or demand . . . for money or property . . . that [¶] . . . is presented to an officer, employee, or agent of the United States . . . ." (31 U.S.C.A. § 3729(b)(2)(A)(i).)

**11** The federal law, like the CFCA, authorizes *qui tam* actions, that is, actions by third parties on behalf of public entities. (*U.S. v. Shasta Services, Inc.* (E.D.Cal. 2006) 440 F.Supp.2d 1108, 1111.)

15

the three progress reports constituted false statements in support of *implied* claims for payment. (*Id*. at p. 199.) The court stated: "Though [the supplier] did not submit a bill for the software, its goal of receiving payment was implicit in the submission of the goods, and the accompanying progress reports had the purpose of "'get[ting] . . . [the] claim . . . approved.' [Citation.]" (*Ibid*.)

In view of *Schwedt*, we conclude that the SACC pleads facts sufficient to establish that notwithstanding the customary contractual procedure regarding change estimates, the submissions were claims under the CFCA, that is, "'request[s] or demand[s]'" for money (§ 12650, subd. (b)(1)). As the SACC acknowledges, a "[c]hange [e]stimate[]," as defined in the contract, functioned as an intermediate step preceding approval of the work proposed in the change estimate. Under the contract, after the change estimate prompted the County's issuance of a "[c]hange [o]rder" authorizing a modification of the project or its time schedule, ABI could apply for payment for the approved work. The SACC further alleges, however, that the submissions, although styled as "change estimates" or "time extension requests," departed from that contractual procedure, and amounted to "requests for additional payment . . . ." They were presented at or about the time that the project had essentially been completed, addressed completed work for which payment had already been requested or made, sought additional payment for that work, and were "intended . . . *in and of themselves* to induce payment" (italics added). In essence, the SACC effectively alleges a modification of the customary contractual procedure regarding payment. (*Davies Machinery Co. v. Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 25 [a written contract may be modified by the parties' subsequent communications and conduct]; Civ. Code § 1698, subds. (a), (b).) The SACC thus alleges facts

16

showing that the submissions constituted "claims," for purposes of showing the presentation of false claims for payment under the CFCA.[12]

SGI maintains that the SACC admits that the submissions were not claims because it alleges that they "proposed an increase" in the contract price and sought "authorization to proceed." We reject that contention, as it relies on selective attention to certain allegations in isolation. In assessing a demurrer, we "give the complaint a reasonable interpretation by reading it as a whole and with all its parts in their context." (*Consumer Cause, Inc. v. Weider Nutrition Internat., Inc.* (2001) 92 Cal.App.4th 363, 367.) As explained above, the SACC's allegations, viewed as a totality, are sufficient to explain why the submissions constituted claims.

SGI also suggests that the SACC's allegation that the submissions concerned completed work does not establish that they constituted claims. The crux of SGI's argument is that nothing in the contract barred ABI from requesting retroactive approval for completed work, and then applying for payment for the work after the approval was granted. This argument also fails because it disregards material allegations in the SAC, namely, that the submissions concerned work for which payment had already been requested or made, and were intended to directly induce additional payment. In view of those allegations, the submissions could not have been made to secure retroactive approval merely as a predicate for future pay applications.

SGI's reliance on *Fassberg Construction* and *Bank of New York* is misplaced, as those cases are factually distinguishable. As noted above (see pt. B., *ante*), in *Fassberg Construction*, the appellate court's determination that the

---

[12]    In view of our conclusion, it is unnecessary to address the County's contention that the SACC states a claim under the current version of the CFCA based on "false record[s] or statement[s] material to a false or fraudulent claim" (§12651, subd. (a)(2)).

17

change order proposals were not claims was based on the undisputed facts established at trial, namely, that the parties had acted throughout the underlying project with the shared understanding that such proposals preceded approval of project modifications and requests for payment for that work. (*Fassberg Construction, supra*, 152 Cal.App.4th at pp. 740-741.) In contrast, the SACC expressly alleges that the submissions in question marked a departure from any such understanding by the parties.

In *Bank of New York*, the plaintiffs initiated a *qui tam* action against two banks under the CFCA on behalf of some public retirement funds, contending the banks had engaged in misconduct while providing financial services to the funds. (*Bank of New York, supra,* 851 F.Supp.2d at pp. 1193-1194.) The complaint alleged that the banks, which had been engaged to make investment transactions involving the funds' assets, arranged the transactions so as to secure profits not disclosed to the funds. (*Ibid*.) The complaint further alleged that although the funds submitted monthly reports to the banks, those reports omitted information necessary for the detection of the improper profits. (*Id*. at p. 1195.) In concluding that the complaint stated no cause of action under the CFCA, the district court determined that the monthly report did not constitute claims because they contained "[n]o demand for payment or approval . . . ." (*Bank of New York, supra,* at p. 1996.) The court stated: "The bare assertion that the monthly reports 'constituted claims . . . [for payments] . . . 'does not cure this defect in pleading." (*Ibid*.) As explained above, no such defect is found in the SACC, which does not make a bare assertion regarding the status of pertinent submissions, but pleads facts sufficient to establish that they constituted claims.

SGI contends the demurrer to the CFCA claim is properly affirmed on a ground not relied upon by the trial court, namely, that the claim is pleaded with insufficient specificity. We disagree. Generally, "when a plaintiff asserts fraud

18

against a corporation, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469, quoting *Tarmann v. State Farm Mut. Auto Ins. Co.* (1991) 2 Cal.App.4th 153, 157.) However, "[l]ess specificity in pleading fraud is required 'when "it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy . . . ."'" (*Cansino v. Bank of America*, *supra*, 224 Cal.App.4th at p. 1469, quoting *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 217.) Thus, a complaint need not identify the person responsible for a misrepresentation attributed to a corporation when the allegations establish the corporation can obtain that information from its records (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 793 (*West*)) or through discovery (*People ex rel. Sepulveda v. Highland Fed. Savings & Loan* (1993) 14 Cal.App.4th 1692, 1717-1718 (*Sepulveda*)).

Here, the SACC alleges that ABI and SGI are alter egos, and that the pertinent submissions were submitted by ABI, "with the assistance [of,] and under the direction of SGI and its employees who had been seconded to ABI." Regarding each of the 50 submissions styled as a change estimate, the SACC describes its identification number and date, the date of its receipt, the amount of payment demanded, and the reason why it asserted a false claim. Regarding each of the 59 submissions styled as a request for a time extension, the SACC describes the identification number of the purported "change estimate" with which it was associated, and the length of the extension sought. The SACC states that the purported requests were false claims because they "were submitted in the total absence of any . . . justification for such requests or . . . any effort to determine the actual time impact of the claimed work;" in addition, the SACC asserts that they

19

constituted false claims for the reasons provided in connection with the related change estimates.

We conclude that the CFCA claim is pleaded with sufficient specificity. The SACC's allegations inform SGI of the dates, identification numbers, and substance of the alleged false claims. (*Murphy v. BDO Seidman* (2003) 113 Cal.App.4th 687, 693, 702-703 [plaintiff's summary of purported false statements in financial reports prepared by defendant accounting firms was sufficient to plead fraud, as the summary provided "enough information for [the defendants] to know what purported falsehoods they must defend against"].) Although the SACC does not name the person or persons who prepared each submission, those allegations are not essential, as that information is available to SGI in its records or through discovery. (See *West*, *supra*, 214 Cal.App.4th at p. 793 [plaintiff adequately pleaded fraud claim based on misrepresentations in letter from defendant bank, even though letter did not identify its preparer, as that information was known to the bank]; *Sepulveda*, *supra*, 14 Cal.App.4th at pp. 1717-1718 [plaintiffs pleaded fraud claim against bank based on misrepresentations by property owners affiliated with bank without identifying the owner responsible for each misrepresentation, as that information could be obtained through discovery].) In sum, the SACC states a CFCA claim against SGI.

### 3. *Interference with Contract Claim*

We turn to the claim for interference with contract. To plead such a claim, the plaintiff must allege "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.) Here, the

20

SACC asserts that SGI intentionally induced a breach of ABI's contract with the County, alleging that SGI employee Kris Mason solicited subcontractors working on the project to submit claims "without regard to whether [they] were valid," and that SGI officers and employees assisted ABI in preparing the false claims described above that were presented to the County.

In sustaining SGI's demurrer, the trial court determined that the SACC's interference with contract claim was derivative of its CFCA claim, and thus failed "for the same reason." As the SACC states a CFCA claim, we conclude that it also alleges misconduct by SGI sufficient to state a claim for interference with contract.[13]

### 4. *Motion to Strike*

We further conclude that SGI's motion to strike was improperly granted. The motion contended the SACC's allegations regarding the purported requests for time extensions were defective because the requests did not constitute false claims under the CFCA. The trial court agreed. For the reasons explained above, we vacate that ruling as well.

---

[13] We recognize that a claim for interference with contract may not be asserted against a "'party to the contract'" (*Webber v. Inland Empire Investments, Inc*. (1999) 74 Cal.App.4th 884, 897-898, and that the SACC alleges that ABI is SGI's alter ego. However, a determination that ABI and SGI are, in fact, alter egos would not automatically shield SGI from liability for inducing a breach of the contract. (*Webber*, at pp. 898-890.)

**DISPOSITION**

The judgment is reversed, and the matter is remanded with directions to the trial court to vacate its rulings on SGI's demurrer to the SACC and motion to strike, enter new rulings denying them, and conduct further proceedings in accordance with this opinion. The County is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

WILLHITE, Acting P. J.

COLLINS, J.

22