Filed 6/9/20

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION ONE

| | |
|---|---|
| CHRISTOPHER TREJO,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>        Defendants and Appellants. | B293564<br><br>(Los Angeles County<br>Super. Ct. No. BS167487) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Hausman & Sosa, Jeffrey M. Hausman and Larry D. Stratton for Defendants and Appellants.

Rains Lucia Stern St. Phalle & Silver, Jacob A. Kalinski and Brian P. Ross for Plaintiff and Respondent.

————————

Deputy sheriff challenged his employer's practice of extending probation while investigating the deputy's claimed misconduct as violating the Los Angeles County Civil Service Rules. Trial court agreed with deputy and issued a writ of mandate directing the Los Angeles County Sheriff's Department to reinstate deputy as permanent civil service employee. We affirm, holding the plain language of the rules does not authorize the department's practice of extending probation by re-assigning deputies under investigation to administrative duty. We also agree the deputy did not fail to exhaust administrative remedies.

## FACTUAL BACKGROUND

### A. The Probation System for Los Angeles County Employees

As a political subunit of the County of Los Angeles (County), employment at the Los Angeles County Sheriff's Department (Department) is subject to the County's Civil Service Rules (Rules).[1] The Rules provide for an initial probationary period after the employee is appointed for County employers to evaluate prospective employees before they are hired into permanent roles. Rule 12.02(A) specifies this probationary period "shall be no less than six nor more than 12 calendar months from the date of appointment."

There are several differences between permanent and probationary employees from both the perspectives of the employee and their employer. For instance, permanent employees participate in retirement plans while probationary employees do not. But, the crucial difference between the two

---

[1] Further rule references are to the Civil Service Rules.

2

classes of employees which drives this appeal is that it is much more difficult to terminate a permanent employee than it is to fire an employee on probation. (See *Birdsall v. Carrillo* (1991) 231 Cal.App.3d 1426, 1431 ["A probationary employee serves at the pleasure of the County and may be rejected from a position without a hearing or judicially cognizable good cause" (fn. omitted)].)

In order to terminate a permanent employee, a County employer must provide a right of administrative appeal under Government Code section 3304, subdivision (b), as well as the pre-termination safeguards provided by *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*) in the form of a "*Skelly* hearing."[2] This is deliberate. According to the County's

---

[2] The right of administrative appeal provided by Government Code section 3304 is an important pre-termination safeguard guaranteed by the Public Safety Officers Procedural Bill of Rights Act (POBRA; Gov. Code, § 3300 et seq.) POBRA's declared purpose was to maintain stable employer-employee relations in order to ensure effective law enforcement. (Gov. Code, § 3301.) One of the rights afforded to a public safety officer is the right to an administrative appeal of any punitive action or denial of promotion on grounds other than merit. (Gov. Code, § 3304, subd. (b).) "Punitive action is defined as 'any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment.' (§ 3303 . . . .)" (*Los Angeles Police Protective League v. City of Los Angeles* (2014) 232 Cal.App.4th 136, 141, italics omitted.)

The protections afforded by *Skelly* apply to all permanent public employees. *Skelly* holds that permanent public employees are entitled to certain procedural rights before proposed discipline is implemented. These include being provided with a copy of the charges and materials upon which the proposed action

3

"Employee Handbook," "If you do not meet performance requirements and expectations, or your behavior is unacceptable, you may be released if you are a first-time probationer." (L.A. County Employee Handbook (2003) Probation, p. C-2.)

Deputy sheriffs serve 12-month probationary periods. Promotion into a permanent position is made by evaluating a deputy's performance of the five essential duties of a deputy sheriff. They are: (1) testifying in court; (2) driving a County vehicle; (3) qualifying with weapons; (4) making a forcible arrest; and (5) seizing evidence or contraband.

If a deputy sheriff is investigated for misconduct while still on probation, it is the Department's policy to place that deputy on "[r]elieved of duty status" pending the results of the investigation. Deputies placed on "relieved of duty status" may be reassigned to modified duties, such as administrative jobs, that do not involve three of the five essential duties of a sheriff, namely, qualifying with weapons; making a forcible arrest; and seizing evidence or contraband. Because deputies on modified duty do not perform all the essential duties of being a deputy sheriff, the Department has a policy in which it "extends" the 12-month probationary period for the duration of the investigation. The extension is necessary because the Department cannot fully evaluate a deputy for promotion into permanent service when the deputy on modified duty is only performing *some* of the essential duties of being a deputy sheriff.

---

is based, as well as being informed of the right to respond, either orally or in writing, before the public employer imposes the proposed discipline. (See, e.g., *Flippin v. Los Angeles City Bd. of Civil Service Commissioners* (2007) 148 Cal.App.4th 272, 280.)

4

The primary issue in this appeal is whether the Department's policy of "extending" the maximum 12-month probationary period by placing a deputy under investigation into an administrative job is lawful under the Rules.

## B.    Trejo's Employment by the Department

After graduating from the academy, respondent Christopher Trejo was hired as a Deputy Sheriff Generalist on February 23, 2014. Trejo's 12-month probationary period started that day. About four months later, Trejo was involved in a use-of-force incident which triggered an investigation. The incident involved a handcuffed inmate who was kicking and pulling away from officers. This commotion attracted the attention of several officers, including Trejo. But only Trejo physically engaged with the inmate. Trejo was relieved of duty on June 20, 2014, pending an investigation into violation of use-of-force policies. He was issued a civilian identification card, relieved of his gun and badge, and no longer possessed police powers. Trejo was then reassigned to the records unit pending this investigation. The evidence before the trial court was that in this modified position Trejo did not perform the essential duties of a deputy sheriff. Trejo continued to be paid.

On August 4, 2014, the Department provided Trejo with a letter purporting to extend his statutory 12-month probation period. That letter stated: "In accordance with Civil Service Rule 12.02, your probationary period as a Deputy Sheriff, Item Number 2708, has been extended. This extension is due to your relieved of duty status. [¶] Upon your return to your assigned duties, your unit will notify Personnel Administration Bureau and your probationary period will be recalculated."

5

Nearly 18-months later, on January 20, 2016, the Department terminated Trejo as taking the position that he remained a probationary employee. The Department's termination letter also informed Trejo of certain appeal rights. Because the Department did not consider Trejo a permanent employee, he was not notified of any rights to a *Skelly* hearing or other pre-termination safeguards available to permanent County employees.

On January 29, 2016, Trejo requested a "Liberty Interest," or "*Lubey*" hearing, "to clear [his] name and be reinstated as a deputy sheriff." (See *Lubey v. City and County of San Francisco* (1979) 98 Cal.App.3d 340, 346.)[3] Following a hearing on August 25, 2016, the Department issued its decision confirming Trejo's termination and concluded he should not be reinstated.

Trejo then contested his termination by filing a request for a hearing before the Civil Service Commission (Commission), asserting he was a permanent employee at the time of his termination. The Department objected to Trejo's petition arguing the Commission lacked jurisdiction because Trejo was only a probationary employee. The Department also claimed the petition was untimely. The Commission agreed the petition was

---

[3] *Lubey* hearings are available to probationary deputies who are discharged based on allegations of misconduct. A protected " 'liberty interest' " is involved because they may have their reputations stigmatized and thus may have additional difficulty obtaining another law enforcement job. *Lubey* provides a right to appeal for the limited purpose of name-clearing. (See *Lubey v. City and County of San Francisco*, *supra*, 98 Cal.App.3d at pp. 346-347; see also *Riveros v. City of Los Angeles* (1996) 41 Cal.App.4th 1342, 1359.)

untimely and did not rule on the merits of whether Trejo was a permanent employee entitled to civil service pre-termination rights.

## PROCEDURAL BACKGROUND

Trejo then challenged his termination by filing a petition for writ of mandate in superior court. His first amended petition, filed May 24, 2017, and the complaint operative on this appeal, alleged three causes of action: (1) a writ of mandate pursuant to Code of Civil Procedure section 1085; (2) a writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5; and (3) relief under Government Code section 3309.5.

The first cause of action alleged the County unlawfully extended Trejo's 12-month probationary period in contravention of rule 12.02(B).[4] As more fully discussed below, rule 12 not only provides that the probationary period for permanent County employment may not exceed 12 months, it also authorizes a County employer to re-calculate the length remaining on a candidate's probation when the employee is "absent from duty." Specifically, when a candidate is "absent from duty," rule 12.02(B) authorizes the employer to stop the 12-month clock for the "time away." The rule also explains the method of calculation: the probationary period remaining after an absence from duty equals "*actual service* exclusive of the time away." (Rule 12.02(B), italics added)

---

[4] As Trejo ultimately prevailed under this cause of action, and because the traditional mandamus relief he successfully sought thereby mooted his second and third causes of action, we omit discussion of the latter two causes of action.

7

The County argued Trejo was "absent from duty" when he was given his replacement administrative job because he was not performing the five essential duties of a deputy sheriff. And, since Trejo was never reinstated to a position involving carrying a gun, making arrests, and seizing evidence, he remained "absent from duty" until the day of his termination.

Trejo rightly responded by pointing out rule 12.02(B) cannot be read in isolation. He observed a key phrase in rule 12.02(B), "actual service," is a defined term found at rule 2.01. And, under rule 2.01, an employee is engaged in " '[a]ctual service' " whenever that employee is performing "the duties of $a$ position or positions including absences with pay." (Rule 2.01, italics added.)

The trial court recognized that evaluating this argument required it to interpret rules 2.01 and 12.02(B) together. Applying rule 2.01's definition of "actual service" to rule 12.02(B) implies that so long as a probationary employee is performing the duties of " '$a$ position,' whether or not it is one for which the employee was hired," the time in that *other position* still counted toward completion of the employee's 12-month probation. In other words, even though Trejo was performing an administrative function, he was still performing the duties of "a position," and the time in that other position must be counted toward completion of his probation. For Trejo, this meant his transfer into an administrative job did not "extend" his probation, it was just more time in another position that counted toward completion of his 12-month probation.

The court had to address a procedural hurdle before reaching this result, however. If Trejo did not exhaust his administrative remedies, as the County argued in response, the

8

court would lack jurisdiction. The court considered two arguments proffered by the County.

First, the County argued Trejo should have filed a grievance with the Commission contesting his probation extension. The court rejected this argument because the Commission lacked jurisdiction to rule on Trejo's claim. The Commission only has the jurisdiction it is explicitly given by the County Charter and the Civil Service Rules, and neither confers jurisdiction over interpretive disputes involving the Rules. (See *Zuniga v. Los Angeles County Civil Service Com.* (2006) 137 Cal.App.4th 1255, 1259-1260.)[5]

Second, the court considered whether Trejo had an opportunity to contest his probation extension under the grievance and arbitration process outlined in the memorandum of understanding (MOU) effective between Trejo's collective bargaining unit, the Association for Los Angeles Deputy Sheriffs (ALADS), and the County. The court found the MOU grievance process did not allow review of a probation extension grievance, however, because the MOU's arbitration process—which is the final level of review for MOU grievances—was explicitly disempowered to rule on claims involving interpretation of the Rules.

The court concluded Trejo did not fail to exhaust administrative remedies because there was no process by which he could have contested his probation extension.

Because there was no procedural bar to review on the merits, the court therefore reviewed Trejo's claim in traditional mandamus. It ruled for Trejo and found he became a permanent

---

[5] The County does not contest this holding on appeal.

employee entitled to *Skelly* rights and an administrative appeal 12 months after his probation period initially began.

The court further ordered the County to: "[S]et aside the dismissal of [Trejo] effective January 20, 2016 and to provide [Trejo] with backpay, as required by law, from the date of his dismissal on January 20, 2016. Should [the County] determine to subject [Trejo] to punitive action, [the County] must provide [Trejo] with all applicable pre-disciplinary rights, including, but not limited to, those rights provided in [*Skelly*], and to provide [Trejo] with an administrative appeal pursuant to Civil Service Rule 4.01."

The court further ordered the Commission to: "[S]et aside its decision on November 9, 2016 denying [Trejo's] request for an administrative appeal and to grant [Trejo] an administrative appeal pursuant to Civil Service Rule 4.01 should the Department determine to subject [Trejo] to punitive action . . . ."

The County timely appealed.

## DISCUSSION

The County argues the trial court erred for two reasons. First, the County insists the trial court's conclusion Trejo became a permanent employee 12 months after his probationary period began is flawed because it relies upon an erroneous interpretation of rule 12.02(B). Second, the County argues the trial court lacked jurisdiction to reach the merits because Trejo failed to exhaust his administrative remedies.

### A.    Standard of Review

Findings of fact made by a trial court in a judgment on a petition for a traditional writ of mandate are reviewed for substantial evidence. We independently review its conclusions of

10

law.  Conclusions of law include the interpretation of a statute and its application to undisputed facts.  (*California Public Records Research, Inc. v. County of Stanislaus* (2016) 246 Cal.App.4th 1432, 1443.)

## B.     Applicable Law

### 1.     *Rules of Statutory Interpretation*

"Generally, the same rules of construction and interpretation which apply to statutes govern the construction and interpretation of rules and regulations of administrative agencies.  [Citation.]"  (*Cal. Drive-in Restaurant Assn. v. Clark* (1943) 22 Cal.2d 287, 292.)  Thus, "the interpretation of civil service rules is purely a question of law." (*American Federation of State etc. Employees v. County of Los Angeles* (1983) 146 Cal.App.3d 879, 884.)

If the statute is unambiguous, we discern legislative intent from the plain meaning of the statute's language itself.  (*People v. Superior Court (Price)* (1984) 150 Cal.App.3d 486, 488.)  If the words of the statute are reasonably free from ambiguity when given their ordinary meaning, we will look no further to ascertain their meaning.  (*City of Los Angeles v. Los Olivos Mobile Home Park* (1989) 213 Cal.App.3d 1427, 1433.)

### 2.     *Civil Service Rule 2 and Rule 12*

We quote the pertinent Rules in full.  We omit quotations marks to facilitate reading and reproduce section headings to supply useful context:

Rule 2 – DEFINITIONS

Rule 2.00 – Applicability generally.
> Unless otherwise required by context, words used in these Rules are understood to have the

11

following special meanings as set out in Rules 2.01 through 2.58.  [Citation.]

Rule 2.01 – Actual Service.

"Actual service" means time engaged in the performance of the duties of a position or positions including absences with pay. [Citation.]

Rule 2.41 – Position.

"Position" means any office or employment in the classified service of the county requiring the full or part-time employment of one person. [Citation.]

Rule 12 – PROBATION

Rule 12.02 – Length of Probationary Period.

A.     The period of probation shall be no less than six nor more than 12 calendar months from the date of appointment to a permanent position, as established by the director of personnel for each class.

B.     If an employee is absent from duty during a probationary period, the appointing power may calculate the probationary period on the basis of actual service exclusive of the time away.  If a change in the probationary period is made, the employee shall be notified prior to the end of the original probationary period. [Citation.]

## C.    Interpretation of Rule 2.01 and Rule 12.02

The question before us is:  When—if ever—did Trejo become a permanent County employee?  Answering this question demands we interpret the applicable Rules.  But it also demands we remain cognizant of the important public policy consequences implied by our analysis.

The County and Trejo each offer public policy defenses of their competing interpretations of the Rules.

The County argues, among other concerns, that if the Department were unable to extend probationary periods, it would likely change its policy and immediately dismiss probationary deputies who become subject to a criminal or administrative investigation.  The alternative to immediate dismissal would be unacceptable, namely, allowing probationary deputies under investigation for serious charges to achieve full civil service status.

Trejo counters the Rules do not authorize probation "extensions" as understood by the Department because its drafters—the County Board of Supervisors—intended to protect probationary employees by capping their period of probation at 12 months.  Otherwise, County employers could move probationary employees from one job to the next and their time spent across those positions would not count toward completion of their 12-month probation.  Trejo also rightly points out that the Rules apply to *all* County employees, and not just those serving the Department.  Adopting the County's argument, Trejo observes, would thus authorize every County employer to adopt probation "extension" practices similar to the Department's, but no such practice, Trejo argues, appears to have been contemplated by the Rules.

13

These are serious concerns, and we are especially sensitive to the Department's needs to investigate probationary deputies who may have engaged in unlawful use of force before they are made permanent County employees.  Nevertheless, we must construe the Rules as they are written if their plain meaning is clear and discoverable.  We now turn to that task.

Rule 12.02(B) authorizes a county employer to re-calculate the time remaining on an employee's probation "on the basis of actual service exclusive of the time away."

In order to understand how to apply this crucial phrase, we start with rule 2.00.  It instructs we must apply the definitions found in rule 2 to the remainder of the Rules.  In this case, the pertinent definition of "actual service" is found in rule 2.01.  As an expressly defined term, we must apply "actual service" literally.  (See *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 ["If the Legislature has provided an express definition, we must take it as we find it"].)

The language of rule 2.01 itself reveals an additional interpretive direction as well.  It defines "actual service" by stating:  " 'Actual service' *means* time engaged in the performance . . . ."  (Italics added.)  This is to be contrasted with a statutory definition where the drafters define a term as "*including* [certain things]" as in " '[a]ctual service' [*includes*] time engaged in the performance."  This word choice matters because "[w]hen a definitional section says that a word 'includes' certain things, that is usually taken to mean that it may include other things as well . . . ."  (Scalia & Garner, Reading Law: The Interpretation of Legal Texts (2012) p. 226, fn. omitted.)  Whereas, when "a definitional section says that a word 'means'

14

something, the clear import is that this is its *only* meaning." (*Id.*, fn. omitted.)

We must therefore apply rule 2.01's definition of "actual service" to rule 12.02(B). Trejo was placed into an administrative job about four months after his employment began. Were the next eight months he spent in that administrative job "time away" within the meaning of rule 12.02(B)? Was he "absent from duty" for those eight months? The Rules define neither. But, rule 2.01 does indicate that during those eight months Trejo remained in "actual service" with the County because he was "engaged in the performance of the duties of a position or positions including absences with pay." Thus, the Department must credit those eight months toward the completion of Trejo's probation period.

The plain meaning of rule 12.02(B) may therefore be derived by applying the defined term "actual service" from rule 2.01.

We need not then wonder what the phrases "absent from duty" or "time away" mean in the abstract because rule 2.01's definition of "actual service" defines them indirectly. The time Trejo spent in his administrative job was not "time away" because that job was still "a position." Nor was he "absent from duty" for the same reason. We also know his administrative job counted as "a position" because it satisfies the definition provided by rule 2.41, namely, "any office or employment in the classified service of the county requiring the full or part-time employment of one person."

Our interpretation derives further support from the interpretive directive that we presume a word or phrase has the same meaning throughout a statute. California courts have long

15

applied this rule of interpretation.  (See, e.g., *Hoag v. Howard* (1880) 55 Cal. 564, 565 ["a word or clause . . . will be presumed to bear the same meaning throughout the statute"].)  This is not an absolute rule of interpretation, however, and the presumption of consistent usage is rebuttable if the statute displays contrary indications of legislative intent.  (See, e.g., *People v. Johnson* (2015) 61 Cal.4th 674, 692 [presumption of consistent usage of " 'term' " rebutted where the statute under interpretation uses " 'term' " and " 'sentence' " interchangeably]; see also Scalia & Garner, Reading Law: The Interpretation of Legal Texts, *supra*, at pp. 170-173 [presumption of consistent usage "assumes a perfection of drafting that, as an empirical matter, is not often achieved"].)

The Rules, however, do not display any contrary indications that its drafters intended "actual service" to have more than one meaning.  "Actual service" appears in only two places in the approximately 50 single-spaced pages of the Rules: in rule 12.02(B) and rule 20.04(A)(4)(b).  Rule 20.04(A)(4)(b), which involves performance evaluations for permanent County employees, uses "actual service" in a nearly identical fashion to how it functions in rule 12.02(B).  The pertinent section of rule 20.04(A)(4)(b) provides, in part:  "If an employee is absent from duty prior to the period while on approved leave prior to the completion of such six-month period, the appointing power may, with the approval of the director of personnel, evaluate the six-month period on the basis of actual service, exclusive of the time away on leave."

We may therefore safely conclude the phrase "actual service" carries the same meaning wherever it appears in the Rules, and it is the meaning supplied by rule 2.01.

We here explicitly observe our holding is limited to cases in which a County employer purports to extend an employee's probation period by re-assigning an employee into a modified position, such as with Trejo. Our colleagues in Division Five recently published *Amezcua v. Los Angeles County Civil Service Com.* (2019) 44 Cal.App.5th 391 (*Amezcua*) in which the plaintiff, also a deputy sheriff, had his probation "extended" following an investigation into misconduct. (*Id.* at pp. 394-395.) Unlike with Trejo, the Department relieved Amezcua of duty entirely. He was paid to stay at home from 8:30 a.m. to 5:30 p.m., Monday to Friday. (*Id.* at pp. 395, 398.) The majority reasoned that under these facts the Department lawfully extended Amezcua's probation because being paid to stay at home meant he was "absent from duty" within the meaning of rule 12.02(B). (*Id.* at p. 398.)

## D. Trejo Became a Permanent Civil Service Employee 12 Months After His Probation Began

The County concedes—as they must—that we are bound to construe the Rules as we construe other statutes: that the rule of interpretation by plain meaning applies unless ambiguity in the words of the statute threatens the reliability of such an interpretation. Its opening brief states: "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.]." (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268.) This is correct.

But, the County elsewhere urges in its briefing that we stray from plain meaning analysis and apply the canons of interpretation to avoid surplusage and interpretation to further legislative purpose.

17

We will first review the County's arguments that the plain meaning of rule 12.02(B) authorized extending Trejo's probation. Next, we address the County's arguments that the trial court's interpretation offends the rules of avoiding surplusage and furthering legislative purpose.

### 1. *The Plain Meaning of Rule 2.01 and Rule 12.02(B)*

We have already explained our reasoning that when rules 2.01 and 12.02(B) are read together their plain meaning is that so long as the probationer is engaged in the duties of "a position or positions" she is not "absent from duty." Applied to Trejo, that means he was not "absent from duty" during the period he was assigned modified duties because the work he performed, although administrative, was in fact work performed in "a position." The trial court thus rightly held he became a permanent employee 12 months after his probationary period began.

The County argues this interpretation is flawed for three reasons.

First, the County argues the plain meaning of "duty" in the phrase "absent from duty" only refers to the time Trejo spent performing the duties of a Deputy Sheriff Generalist. This is because the pertinent "dictionary definition" of "duty" is an " 'action or a task required by one's position or occupation.' " (Webster's Encyclopedic Unabridged Dict. (1989) p. 444.) But, since Trejo was not "engaged in the . . . duties of [*his*] *position*" (rule 2.01) while on modified duties, he was "absent from duty" under the meaning of rule 12.02(B) because he was not "on duty."

We reject this argument because it begs the question of whether Trejo's modified assignment counted as an "absen[ce]

18

from duty" in the first place. What counts as an "absen[ce] from duty" is precisely the task before us, and its meaning is discoverable by applying rule 2.01. Rule 2.01 applies to rule 12.02(B) because rule 2.00 says it does, and rule 2.01 does not limit "absences" to absences from duty from *the position the employee was hired into.* Moreover, the drafter's usage of the complete phrase "a position *or positions*" shows they intended rule 2.01's definition of "actual service" to apply to employees even after they are to be transferred into a different assignment. Otherwise, it would make no sense to use the plural "*positions*" since every employee begins employment in just one "position."

Second, the County argues if we incorporate rule 2.01's definition of "actual service" into rule 12.02, we render the phrase "on the basis of actual service *exclusive of the time away*," mere surplusage.

This argument also fails because it assumes that our interpretation never allows for any "time away." But, this is incorrect. As noted above, Division Five of our court held in *Amezcua* that the Department may lawfully extend a probationer's extension if they pay the employee to stay at home because then the employee would be "absent from duty" within the meaning of rule 12.02(B). (*Amezcua*, *supra*, 44 Cal.App.5th at pp. 397-398.) The period of time the probationer is paid to stay at home is equivalent to their "time away." (*Id.* at p. 398.) The County's reply brief repeatedly relies upon *Amezcua*. The County thereby acknowledges that there is in fact a path whereby the Department can lawfully compel a probationer to take "time away" and it is precisely the route taken by the Department in *Amezcua*. Our holding does not render the phrase "time away" surplusage because being paid to stay at home while under

19

investigation counts as "time away" under *Amezcua*, and is therefore not *meaningless*. (See *Woosley v. State of California* (1992) 3 Cal.4th 758, 775-776 [surplusage canon only applies when an interpretation renders words or phrases meaningless].)

Third, the County argues the trial court placed too much interpretive weight upon the letter "a" in the phrase "*a* position or positions" when it concluded Trejo's modified position still counted as "actual service" because it was still time spent in "*a* position" within the meaning of rule 2.01. Such an analysis, the County contends, is too "mechanical," and should be eschewed in favor of a "practical and contextual reading of [r]ules 2.01 and 12.02(B)."

We disagree that a "mechanical" interpretation is an incorrect interpretation. The County correctly observes elsewhere in its briefing that it is an "established canon" of statutory interpretation that "significance is attached to 'every word, phrase, sentence and part of an act.' " Our interpretation properly gives effect to the indefinite article "a" (in the phrase "*a* position or positions") which is in fact a "word." Although the County believes indefinite articles should be downgraded in the task of interpretation if their literal application would create anomolous results, that argument does not reach our obligation to also apply the complete phrase "a position" (as found at rule 2.41) which is not so semantically weak.

### 2. *The County's Arguments Premised upon Avoiding Absurd and Impractical Interpretations are Unpersuasive*

The County's real complaint with the trial court's analysis is the following: "[T]here is no practical purpose in forcing the Department to assign a probationer to sit at home, with or

without pay, as a prerequisite to investigating misconduct." Variations of this argument surface throughout its briefing: "Public policy and a practical interpretation of [r]ule 12.02 favors allowing the Department giving Trejo modified duties." Likewise, "Trejo's interpretation of 'duties' would absurdly give probationers who are under investigation less scrutiny regarding the essential duties of the position than deputies who are under no cloud of suspicion." And: "Trejo is not the only employee affected by this action. These issues have significant ramifications for all future probationary employees."[6]

We quoted the County's arguments extensively to aid in exposing its reliance upon a hidden premise, namely that we should reverse the trial court to avoid the absurd and impractical results its interpretation imposes upon *the Department*. But, this premise is flawed because the County's Rules bind *all* County employers, not just the Department. The County provides no argument that the trial court's interpretation of rules 2:01 and 12.02(B) lead to absurd and impractical results for *all* County employers.

The trial court rightly observed its interpretation "may not serve the needs of the Department, but the Department is not

---

[6] The County repeatedly emphasizes the Department's practice of extending the probation of probationary deputy sheriffs under investigation is taken pursuant to a carefully worked out plan articulated by the Department's Manual of Policy and Procedures. We question the relevance of the manual to our interpretive task because the Department is not entitled to deference in its interpretation of the Rules, via the manual or otherwise.

entitled to any deference in the interpretation of County personnel rules."

We acknowledge the Department has important reasons for extending the probation of deputies who come under investigation. As the County emphasizes, three of the five essential duties of deputies involve carrying weapons, making forcible arrests, and seizing evidence and contraband. Misuse of these duties and their attendant privileges has the potential to create distinctively important risks to the public and the administration of justice. But, the County has not offered authority for the proposition that the importance of the Department's probation extension policies means we are free to interpret the Rules any differently from how we are obliged to construe any other statutes, i.e., by discerning their plain meaning. Indeed, the County's brief elsewhere admits this: "[T]he subject matter limitations and time limits within the Rules are interpreted in the same manner as other statutes."

We therefore conclude the plain meaning of rule 12.02(B) may reliably be discerned by applying the definition of "actual service" from rule 2.01. We agree with the trial court that a County employee may not have his probation extended if he is placed in another "position or positions."

## D.  Trejo Did Not Fail to Exhaust His Administrative Remedies

As a general rule, a court lacks jurisdiction to issue a writ of mandate if the petitioner has not exhausted his or her available administrative remedies. (See, e.g., *Alta Loma School Dist. v. San Bernardino County Com. on School Dist. Reorganization* (1981) 124 Cal.App.3d 542, 554.) "[A]n administrative remedy is exhausted only upon 'termination of all

22

available, nonduplicative administrative review procedures.' [Citations.]" (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080.)  The doctrine of exhaustion of administrative remedies is treated as jurisdictional.  (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70.)

The County argues the trial court lacked jurisdiction to reach the merits because Trejo failed to exhaust administrative remedies.  Specifically, the County argues Trejo failed to avail himself of the "right to appeal" purportedly provided by rule 12.05 which states as follows:  "If an employee is given notice of a probationary period which the employee believes is in violation of this Rule, such employee may appeal through the established grievance procedure in the department, or through the grievance procedure contained in any memorandum of understanding in effect between the county and the certified employee organization for the employee's class."

This rule, the County argues, "governs all aspects of probation, including the probationary period of new employees, such as Trejo."  Because Trejo did not appeal the extension of his probation through the procedure provided by rule 12.05, the County argues he failed to exhaust his available remedies.

The trial court rightly rejected this argument.  Rule 12.05 provides that an employee appealing a rule 12 probation question may appeal through either: (1) the grievance procedure involving such issues already in place in the Department; or (2) through the grievance procedure set forth in an MOU.

We acknowledge there is a grievance process available to all deputy sheriffs, including Trejo, as provided by the MOU in place between the Department and ALADS.  This grievance

23

procedure is a complex and detailed process.  The MOU provides for several layers of administrative evaluation.

- Initially, the employee is encouraged to discuss the complaint informally with their immediate supervisor.
- If unsuccessful, a formal grievance may be filed using a Department grievance form that must describe the problem and indicate the desired remedy.  A third-level supervisor must then provide a written decision on the grievance.
- The employee may appeal to the review board which consists of the division chief, area commander, and, at the employee's discretion, two sworn departmental members possessing a higher rank than the employee (collectively comprising the "review board") who then confer to evaluate the grievance and then issues a recommended decision.
- The review board's recommended decision on the grievance then becomes binding upon approval by the Sheriff.
- The employee may still appeal the decision approved by the Sheriff through the arbitration process outlined by the MOU namely, by arbitrating before the Los Angeles County Employee Relations Committee (ERCOM).

But, the reason why this process is not a remedy Trejo failed to exhaust is that ERCOM is not empowered to review Trejo's rule 12 argument.  Section 6.2 of the MOU explicitly forbids arbitration over interpretation of the Rules.  It provides: "In no event shall such arbitration extend to:  [¶] . . . [¶] The

24

interpretation, application, merits or legality of any or all of the County of Los Angeles Civil Service Rules . . . ." Thus, the grievance process outlined by his bargaining unit's MOU simply did not provide Trejo an avenue of administrative appeal because his appeal of his probation extension would necessarily have turned on the interpretation of rules 2.00 and 12.02(B).

As the trial court correctly ruled, the grievance procedure in the Department's MOU was limited to "the calculation of probationary periods based on an accepted meaning of [rule] 12."

In sum, we agree with the trial court that Trejo did not fail to exhaust administrative remedies because none existed that were empowered to reach the merits of his lawsuit.

## DISPOSITION

The September 13, 2018 judgment is affirmed. Trejo is to recover his costs on appeal.

CERTIFIED FOR PUBLICATION

WHITE, J.[*]

We concur:

CHANEY, J.                    BENDIX, Acting P. J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25